Fundamental error here is that the District Court should have recognized that the invention does not require re-authentication, nor was re-authentication added to Claims 1 and 24 during prosecution to overcome prior art. The District Court got hung up on a statement in the abstract that led it to conclude wrongly that an operating session must start only after initial authentication. The full intrinsic record demonstrates that an operating session starts with a request for a protected resource. Based on its definition of operating session, however, the Court reasoned at A131 that, quote, it thereby follows that the claim limitations requiring forwarding of the predetermined digital ID during an operating session do not read on initial authentication. Thus, the Court further erred by ruling that to thereby confirm must refer to re-authentication in Claims 1 and 24. In fact, the logic of the claims and the remainder of the specification shows that Claims 1 and 24 read perfectly on initial authentication, which happens in an operating session. Well, no. Claims 1 and 24 were amended during prosecution to add limitations in effect from dependent claims 3 and 5, I guess. That's correct. Claim 5 was the one which previously did, I think everybody agrees, require re-authentication, correct? Claim 5 required, actually encompassed initial authentication and re-authentication. And then it's Claim 6 that talks about successive requests, which is the first claim that exclusively talks about re-authentication. So what was added from Claim 5 was to check the digital ID from the access key, which in that context is part of initial authentication and fits within the logic of Claims 1 and 24. But you wouldn't have satisfied Claim 5 by just initial authorization, do you think? I'm sorry, wouldn't have satisfied Claim 5? In other words, Claim 5 had the requirement of intermittent checking. So checking right at the outset wouldn't satisfy the requirement. That would only be part of it. That would not be the whole of it. That's correct. So my question is, if Claims 3 and 5, the examiner said, if those are added, this will be allowable and language from those was added. If the substance of Claim 5 was in fact added, then what was added if not re-authentication? Well, as I said, the substance of Claim 5 was more than just re-authentication. And moreover, things were changed. The word intermittently was not put into Claim 1. And by the way, the whole selectively request language was not put into Claim 24 at all. So if the examiner thought that they were, the idea that re-authentication was being added certainly couldn't have been added to Claim 24, which was application Claim 28. But more specifically with your question to Claim 1, what was added was the part about pulling the access key, checking for the digital ID, and then in adding it to Claim 1, it was limited to initial authentication. The intermittent part was not put in Claim 1. That language isn't in there. Well, the language confirm is in there. Selectively. Sorry, just a final thought. The language confirm was there. And I take the verb confirm typically to mean to affirm that which one already believes to be the case. As in, for example, I would not say that I checked the newspaper today to confirm that I won the lottery unless you had called me and told me that I won the lottery, and I would check to confirm. So it seems to me that that itself suggests a re-authentication or a re-determination of the validity of the address to which the connection is assigned. I think actually it's more in the context of confirming the expectation that once you've made that request, there is a user in this strong authentication context, there is a user with an access key, and there's going to be a digital identification, but you're through the step of requesting it, obtaining it, adding it to the username and password, and sending it to the clearinghouse. Now, would you agree that the examiner appeared to believe, by virtue of the language used and the reasons for allowance, that there was, re-authentication was added, the requirement of re-authentication was added to Claims 1 and Claim 2? Absolutely not. The examiner talked about checking for the predetermined digital ID during a session. So you have to look at what an operating session is. And if you look at the meaning of what an operating session is, let's look at Claim 1, which is on A196. And that, of course, is the best place to start, according to this board of Philips and Vitronics, etc. If you look at the preamble, right from the beginning of that claim, it talks about the elements of this claim occurring in an operating session. It doesn't say before an operating session starts. The second and third elements of Claim 1 refer to forwarding identity data for the server and subscriber, quote, at the beginning of an operating session, in which. Okay, so this is happening, again, in an operating session, in which access to selected resources is requested. So the request for resources is in the session. So that's three places in the preamble and the first two elements where it says that happens in a session. If you look at Figure 2, for example, which is what, Figure 2 depicts the steps that are taken during a session, according to Column 6, which describes it. Figure 2 is at A156. And Figure 2 starts with Step 1, which is Request for Protected Content, which is exactly what we're saying starts a session, an operating session. From there, you can continue, for example, to Figures 17 and 18, which are at A165 and 166. And everyone agrees that those depict initial authentication, the starting of a session, as Figure 17 is titled. And there, again, at Box 100, the user, the first step is the user requests access to a protected resource. And carrying over into Figure 18, you see at Box 144, 146, in the leftmost column of Figure 18, it talks about the login interface requesting access, or polling for the access key. It then reads the digital ID, 146, and as you continue down the leftmost column of Figure 18, it reads the user ID. So that's exactly what you saw in Claim 1, as you get to Elements D and E, where it's taking that digital ID off of the access key, it's combining it with a username and password, and it's sending it back to the server, which clears it with the clearinghouse, and then decides, if it's authentic, that it can release the protected resource. So, Figure 2, Figure 17, Figure 18, all fit with the logic of Claim 1 and suggest that an operating session starts with the Request for a Protected Resource. So, on that issue, PRISM asked this court to hold that an operating session is a period of communication between a subscriber-client computer and a server that begins with a protected resource. I'd like to turn to, also, the, to thereby confirm limitation. Well, I have a question regarding Claim 24. If it was amended, what did it add to the previous claim? Well, what was added to Claim 24... If it doesn't require re-authentication. Well, again, what was added, this is the method claim version of Claim 1. Right. What was added was Element C, which talks about forwarding a predetermined digital identification. And again, that was not in Claim 1 or 24, either as initial authentication or re-authentication. But when you add the language, as Judge Bryson pointed out, you added the amended original Claim 5 and Part C, requiring a subscriber-client computer to forward a predetermined digital identification to said first server to thereby confirm that a network key is connected to said subscriber-client computer. Is that not re-authentication? No, Your Honor. That's... What is that? That's initial authentication. Now... So that's what was rejected by the examiner in the first place. Absolutely not, Your Honor. Initial authentication wasn't part of Claims 1 to 4. Claims 1 to 4 did not refer to the hardware key and checking for the digital ID off of the hardware key. So that was added from Claim 5, and it was added to Claim 1 with the language Selectively Request. It was added to Claim 24 without even that Selectively Request language. It was simply added that it checks for the digital identification. It has to get that digital identification, as you see in Figure 18, and as is in the logic of Claim 1, in order to go to the clearinghouse and clear that this is a valid user. Well, the language Selectively was not in the original Claim 5. It said intermittently. And that's part of what I was saying to Judge Bryson, that that change is part of what only put initial authentication into Claims 1 and 24, not re-authentication. Initial authentication was already in the prior art, and that's what the examiner indicated. No, that's not correct, Your Honor. What was in the prior art was a system that, for example, two repositories in STEFIC communicated between themselves using encryption and decryption and certificates without going to an external clearinghouse, without reading a digital ID off of a hardware key. So it was really, it was a fundamentally different system, and it wasn't necessary to add re-authentication to overcome that prior art. But he allowed it over STEFIC. Is that correct? Ultimately, it was allowed over STEFIC. Over STEFIC. Yes. And STEFIC failed to disclose, as the examiner said, the server requesting digital information from the client during an operation session and using the information to confirm with the hardware. So that's re-authentication. No, Your Honor, it's not. As I was explaining, an operating session starts with a request for a protected resource. So during an operating session includes that initial authentication that you see in Figure 2 and Figure 17 and 18, and checking for that digital ID is part of how in that operating session it performs initial authentication. It has to get that predetermined digital ID, combine it with and find out that you have a valid server and a valid subscriber. And Figure 20 then? What does Figure 20 say? Figure 20 is re-authentication, and that's a separate process, although it has some of the same elements. And in your view, E adds what to D? Claim 1, Your Honor? E is... D adds the hardware key. And you've talked a lot about the hardware key. What does E add that D does not? In other words, you added Claims 3 and 5. What is it that was in Claim 5 that was added that wasn't already present in Claim 3 when it was added to Claim 1? Requesting the digital identification from the hardware key. That's what's explicit in Element E, and that's not in Element D. It's hard to imagine what purpose would be served by the hardware key adapted to generate a predetermined digital identification if it wasn't going to be exactly that system, right? Well, there are other things that could be on a hardware key. It could be just a number. It could be a name. It could be something that's not an algorithm. But it has to be to generate a predetermined digital identification. That's in D. Right. So it has to have that. Right. Okay, so you're correct. The hardware key has a function in D, but it's only in E that it interacts with the server. So I think that's a fair distinction. That's another step that isn't expressed in D. But in Step E, isn't the server making the query? That's correct. So that's re-authenticating the key's existence at that point in time. No, Your Honor. The server has to make a query in initial authentication also, and that can be seen in Figure 17 and Figure 18. If you start at on page A-165, if you start at Box 110 and Block 116, the server application login enforcer makes the user log in. But that's true of all identity data, correct? It's not exclusive to the digital identification, correct? Right. The server starts the process, and as part of that process it asks for username and password and that reads the digital ID. If I may, I'd like to reserve my available time for rebuttal. All right. Thank you. Mr. D'Amato? D'Amateo, right? D'Amateo. This is a classic claim construction appeal. It's been very well briefed, so I have very little to add, just to respond to a couple of comments. I think the Court understands that the language at issue is to thereby confirm directly from original all-dependent claim 5, which indeed, nobody really disputes is re-authentication, intermittently requesting. It was clear in the examiner There's a dispute, I think, on that, because Mr. Slinson says, well, it incorporates re-authentication, but it also reaches simply initial authentication. Well, it's our position, and it's clearly directed only to re-authentication, because it's the only digital information to confirm that the hardware key is attached. What are you seizing on that tells you that that's only re-authentication? The word confirm? The word confirm. The word's from the server. If I understand correctly, all the identification data comes, there's a request from the server in all those cases, correct? The server requests, in the words of the claim, identity data. Right. So there's nothing peculiar about what goes on in E that distinguishes it from the process that's employed with respect to the other identity data, correct? There is something peculiar going on in E. And that is the server confirming that said hardware key is attached. But again, are you going back to the word confirm? I thought you were saying there's another reason besides the word confirm that we can discern from E that it must be exclusively directed to re-authentication. It's three things. It's the server making the request. Alright, but that occurs in authentication, I understand. The server requests identity data in initial authentication. The server also requests re-authentication. So it's consistent with both. Alright. So we really can't count that. Two, it's not asking for identity data. Yes, it's not asking for identity data. It's asking for something specific. Right. Just the predetermined digital information. What is sitting, the number on the keys. That is a subset. And the only time that this system looks at that subset information, just the digital information is in re-authentication. In all other times, digital information is lumped together with the identity data. It's part of that bundle of information. But the only time that the server is looking just for identity data is in re-authentication. So that's two. And you draw this from the spec. Exactly. The descriptions of authentication versus initial authentication. Re-authentication. Parallels the spec. Three, the act of confirmation. And I agree with you. That was the word that jumped out at me when I first looked at this. When you confirm something, there is a statement made and then you're confirming it. Your lottery example. Ronald Reagan's famous quote, trust but verify. I trust that you've done something, whether it's ballistic missiles, but I'm going to verify it. That's re-authentication and that's the words the specification uses. Again, it uses the words to ensure that the hardware key is connected. Mr. Swenson argues that that's true where you have backup initial authentication mechanisms so that you have three different ways to tell whether you've got the right person and your third way becomes a confirming method. It just gives you greater insurance, something that you already have some indication that you have. You're probably articulating it even better than him but I don't understand that point and why confirming is something, why confirming is the same as initial authentication because initial authentication is something that's occurred on the clearinghouse on identity data but confirming is there is a statement made in this case, digital identification has been passed up and now I'm going to confirm that that digital identification matches the hardware key matches and that's my confirming act. In other words, during initial authentication there is digital information, part of the identity data that gets logged, becomes part of the session ID. The confirming act is when the server then just asks for the digital identification alone at a time subsequent to initial authentication and compares that digital identity to what it just received from the initial authentication data to confirm that the keys match. Let me say that again because that's confusing. If you understand it that's the act of confirming and that's the three things. The fact that it comes from the server consistent but it's a server request. Two, that it's only digital information and three, that it's confirming. But the file history makes this very clear and that was my opening point. Original claim, dependent claim five said intermittently, the server intermittently requests this digital ID to confirm the hardware key is attached. Even Prism concedes that that claim was initial re-authentication and that was the claim, that re-authentication claim, what the examiner allowed. He says, if you incorporate those features into the claim, I will allow it and that's exactly what they did. They took those features and they put in the claim. Not quite. We'll come back to that in a minute but that subtle change and the examiner told us why he was allowed. The prior art fails to show that the hardware key is confirmed during an operating session. Now let me take a small little detour here. This is the first time on this appeal that Prism is taking the position that confirming during an operating session is not re-authentication. In their briefs they were pretty clear that during an operating session is re-authentication but now confronted by this court with the examiner's reason of allowance, they've taken a switch. I think the record's pretty clear that confirming during an operating session is re-authentication and that's what the examiner allowed. Now let's come back to the not quite. Their entire case is down to switching the words intermittently to selectively. Does that magically transform a re-authentication claim to initial authentication? No. All selectively says well, let's go back to intermittently that's a series of requests to re-authenticate. Selectively now says okay, you have to do it at least once and we're looking for a subset of data that you have identity data but now all we want is digital information. So it's completely consistent with re-authentication but you're only going to do it once. Two, during the examination when they made that amendment and they changed intermittently to selectively, they never argued to the patent office and the examiner. By the way examiner we've made this change and what was and everybody agrees was a re-authentication claim that you allowed is now selectively and is now initial authentication. You're silent on that. Three, you have the examiner's reasons for allowance where he understood that this is not only they said silent, they thanked the examiner and appreciated his comments. But that's boilerplate. We've often said that the examiner's understanding of scope of a claim for purposes of a statement of reasons for allowance is not binding on the applicant. Set alone that may be true but coupled with the reasons why he allowed the claim the subtle word change and their acknowledgement and appreciation for that I think the public record compels that it be read as re-authentication. How would the public otherwise read this file history? I'm going to briefly touch on operating session Operating session except to the extent that it bears on this issue I take it as an independence freestanding issue and also connection hardware key Don't resolve this case I take it. You can decide this on there by confirms Not only even if we decided not to rule on there by confirms we couldn't decide the case I take it on issues two and three. So I'm not sure why we're here other than to if there's a remand give the district court some advice. Certainly I'm connected without question that would be giving him advice we've made that point in our opposition brief it doesn't belong here. Operating session is only in here in front of you because that was one of the rationales that Judge Farnon used to reach his claim construction on to there by confirms but I agree with you if properly construed to there by confirms re-authentication operating session does not need to be construed but that's why I'll only touch on it briefly and sit down before using up my time The question there is at the beginning of an operating session how to properly construe that does that include within the operating session or not and we have competing definitions for that term prison's position is that embraces the operating session our position defendant's position is it's the moment just before accepting that there's at least a legitimate dispute on how to construe that term standing alone prison loses why? because when you turn to the specification it's very clear and the abstract is straight on point it says an operating session occurs after initial authentication no if ands or buts and their only way around that is to argue that the claim language is so clear and so diametrically opposed to what the abstract says you're allowed to ignore and it's not that clear and it's pretty clear that there's at least a legitimate dispute and the specification answers that for us. Now is that supported the starting session supported by figure 17 the flow diagram there? Exactly that's the moments just before an operating session is what do we have to do to get this session started not that the session has started now the debate gets into linguistics because the word session is used broadly always does always does end up in linguistics plain construction the word session is used very generically and they're right there are times when the whole thing is called the session but when you put the adjective operating session you have the abstract and then when you put the adjective new session or active session you have what the specification is well it's headed up by saying starting of the session that's the beginning of the authentication that's the initial authentication right, what do I have to do to launch the session and that's where we are I have nothing further how does that fit in with the flow diagram on 20 flow 20 is during an operating session that is re-authentication and that's exactly what it's called that's the real heart of the issue isn't it if you follow the flow diagram in 20 the issue as to operating session or to thereby confirm yes, what happens in 20 is you have the request, you have a timer on the server it says hey, we now have to check whether the hardware key is attached if it's the same one that's the session validator has the time limit exceeded that's box 120 on figure 20 yes, ok, let's now selectively look for the digital information and you have boxes 222, 224 saying ok, this is the server requesting only the digital information that comes in from the server that goes to the server and that gets sent over the client client says give me your digital ID, passes it back up to the server onto 21 and then the confirmation to show you how this all comes to closure here, if you look at box 28, no, I'm dyslexic 258 on figure 21 session validator finds user session entry and validates the encrypted digital ID, that said hardware key being confirmed with what was originally used to log on. Now in terms of the mechanics of the initial authentication process, the mechanics setting aside the fact that in re-authentication there's a call only for the digital information the mechanics with respect to the calling for information regarding digital information would be the same as those described in D&E, would they not? No, they're different, they're different they do share one thing in common sure sure, they do share one thing in common login interface request, access key blah blah blah they share one thing in common in both cases they actually have to pull the hardware key and get the digital identification off that's what they share in common, but in initial authentication, if you look on figure 18 box 148 right that digital ID is then merged to the login parameters and it becomes one of a group, a set of numbers, username password and digital ID so in that case it gets lumped together into a bigger number, digital ID but it's still there but the claims already reflect that before you get to thereby confirm if you look at claim 1 element D which comes from original dependent claim 3, at least one hardware key connected to the subscriber client computer said key being adapted to generate a predetermined digital identification that's going to be step 146 which identification is part of said identity data, that's where it gets merged into the identity data so claim 21 already recites this, okay let's incorporate the digital ID into the identity data and that's initial authentication alright thank you question a couple of quick points first of all we need to win on operating session and to thereby confirm because both of those distinguished focused on re-authentication and the judgment below that was agreed to was on the basis that they don't do re-authentication so it's true that they could win if they won either of those, we need to win both to go back, is why we're here on those issues. But this is only because operating system and re-authentication are really the same thing what we've been discussing this morning it's not as if there's a separate issue out there I was having trouble figuring out what operating system meant standing on its own it doesn't stand on its own is what you're saying it's all interrelated, that's correct I just want to be clear that the court doesn't just focus on the one second thing I want to just be clear that we all agree there is a call I think for the digital ID alone as part of initial authentication and then it gets combined as he said several times with username and password gets sent to the clearinghouse and you know that claim one is about initial authentication because you have in the further elements of claim one after E the combining to form said identity data of which the predetermined digital ID is a part, that is then sent to the server which sends it to the clearinghouse the clearinghouse authenticates and then you release the protected resource so that's exactly right that it requests because it has to request that off of the hardware key by itself because that's what's on the hardware key including for initial authentication and to go to something Judge Bryson was discussing earlier I think this is illustrative one of the terms that was put into claim one was selectively request and it's worth noting in the judge's opinion at A47 and 48 that as part of construing the server software means on the server it's a 112.6 limitation and it's not contested on this appeal the court's construction of the structure and it said on that page the corresponding structure is quote that portion of the server software that selectively determines whether EG upon a request for access to protected computer resources which we're saying is the start of a session to request subscriber client computer to forward its digital identification to the first server computer to confirm the presence of a hardware key and equivalents there up so in that context the court explained and it's not contested what selectively request meant which is obviously something different from intermittently that was in claim five your time has expired sir thank you your honor case is submitted